IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **WILLIAM A. SHIREY**, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **CASE NO. 5:08-CV-0336-KOB** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of the Social**, ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, William A. Shirey, protectively filed an application for Disability Insurance benefits under Title II of the Social Security Act on October 14, 2005, stating that he became disabled on October 12, 2005, due to back problems, a possible seizure disorder, and a mood disorder. The Commissioner denied the claims. The claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ). The ALJ held a hearing on June 4, 2007, in Decatur, Alabama. In a decision dated June 21, 2007, the ALJ denied an award of benefits after finding that the claimant was not disabled under sections 216(I) and 223(d) of the Social Security Act and therefore was not eligible for benefits. The claimant timely appealed the ALJ's decision to the Appeals Council, which denied his claim for review on December 27, 2007. The Appeals Council's denial made the ALJ's ruling final, and the claimant has, therefore, exhausted his administrative remedies. The claim is now ripe for review by this court and jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons stated below, this court AFFIRMS the

1

Commissioner's decision.

## II. Issues Presented

In this appeal, the claimant alleges that the Commissioner erred in two ways: (1) the ALJ did not give the opinion of his treating physician, Dr. Solorio, appropriate weight; and (2) the ALJ failed to consider his three impairments in combination.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence.  See 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Brown*, 826 F.3d 996, 999 (11th Cir. 1987).  "No . . . presumption of validity attaches to the [Commissioner's] legal conclusion, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.3d at 999.  This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker,* 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

To establish disability, the claimant has the burden of proving the first three steps, namely that (1) he is not engaged in substantial gainful activity, (2) he has a severe impairment or combination of impairments, and (3) his impairment or impairments meets or exceeds the criteria in the Listings found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the claimant cannot prove that he has a listed impairment, he must prove alternatively that he is unable to perform his previous work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990).  Once the claimant shows that he cannot perform his previous work, the

burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones*, 190 F.3d at 1228.

The ALJ must give considerable weight to a treating physician's opinion. *Crawford v. Comm`r*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). However, "the Commissioner may reject any medical opinion," including a treating physician's, "if the evidence supports a contrary finding," *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). The Commissioner also must articulate specific reasons for rejecting the treating physician's opinion. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

## V. Facts

The claimant was forty-five years old at the time of the administrative hearing, and is considered a "younger individual." (R. 25). He has a high school education, and he has completed two years of college. *Id.* Prior to his back injury, he worked for the City of Decatur, Alabama for approximately fifteen years, primarily as a groundskeeper. (R. 71, 76). The claimant alleges disability starting October 12, 2005, because of a back injury and a seizure disorder. (R. 70).

In June 2003, the claimant suffered a mild compression fracture of his back at T12 and L1, which did not require surgery. (R. 120). He presented to Dr. Solorio, an orthopedist, for examination, complaining of back pain, and Dr. Solorio diagnosed a broken back. *Id.* The claimant was off work following his injury, but returned to light work duty in early September. (R. 117-20). Also, he was on Feldene, an anti-inflammatory drug. *Id.* On October 7, Dr. Solorio noted that the claimant's fracture appeared to be healing and referred him to physical therapy. (R. 118-19). On November 4, the claimant reported for a follow-up visit with Dr. Solorio, who

found that the claimant's fracture was about 20% stable and that he had some back pain. *Id*. By December, Dr. Solorio observed that the compression fractures were stable and had healed, and further, that the claimant had normal 5/5 strength, no instability, no deformity, no spasm, and no sensory or neurological issues. (R. 117-18). After the December visit, the claimant resumed his regular job, which is considered medium work. (R. 118).

In 2004 and 2005, the claimant continued to work as a lawn service worker, but would periodically go on light work duty. (R. 140-45). Dr. Donham, a family doctor and claimant's treating physician since at least 1998, ordered follow-up spinal x-rays on the claimant at his March 2005 visit. (R. 186). The radiology report stated that the images showed slight dextroscoliosis (lateral deviation of the spine), some mild degenerative changes, and some degenerative hypotrophic changes of the lumbar facets, but showed no evidence of fracture, subluxation, or destructive lesion. (R. 195).

On August 3, 2005, the claimant received an epidural steroid injection for his back pain at Decatur General Hospital. (R. 158). Dr. Lowery, an occupational health physician and a treating physician, saw the claimant in August 2005 for a fitness for duty and return to work evaluation. (R. 279). Dr. Lowery reported that the claimant felt he could do his job, but just not as quickly as the other workers, and he could walk without a cane for short distances without having lower back pain. *Id.* The claimant saw Dr. Lowery for another evaluation in September 2005, and Dr. Lowery found that the claimant seemed not to give a full effort, resulting in a lack of consistency in the August and September 2005 evaluation results. (R. 274). Further, Dr. Lowery opined that the claimant could not be on the lawn crew and do the full array of duties without accommodation; he could perform no repetitive squatting, no ladder climbing, no work from

unprotected heights, and no operation of machinery and vehicles. *Id*. Further, the doctor imposed a thirty-five pound weight limit for lifting and carrying. *Id*. Dr. Lowery saw the claimant again in October 2005, and said that the claimant was released for full-time work with restrictions as of mid-September 2005. (R. 270). Following Dr. Lowery's evaluations, the City of Decatur notified the claimant that his temporary light-duty job placement had expired and no permanent light-duty jobs were available; the claimant retired at that point, did not try to find any light-duty jobs, and alleges total disability since October 12, 2005. (R. 21, 290).

In November 2005, on a disability survey, the claimant indicated that he has seizures every three to six months. (R. 85). In January 2006, the claimant saw Dr. Donham again. (R. 184). They discussed his back pain, which the claimant said was improving. The claimant indicated, however, that he still had some numbness in his foot, and that the phenobarbital and Dilantin he was taking for seizures were working pretty well. *Id.* Examination revealed limited lower back tenderness on palpitation, and a reflex test showed deep tendon reflexes of 1+ (within normal range) in the lower extremities. *Id*. Also, the claimant denied taking any pain medication at that time. *Id*.

Also in January 2006, a state agency disability consultant and a state agency medical consultant evaluated the claimant without seeing him and without having all of his medical records. (R. 229-37). They determined that he could lift fifty pounds occasionally, lift twenty-five pounds often, stand or walk for six hours of an eight-hour workday, sit for the same period, push and pull an unlimited amount; that he had balancing limitations; that he could not ever operate machinery; and that he needed to avoid exposure to extreme heat and cold. *Id*.

Dr. Donham continued to see the claimant throughout 2006, and the claimant reported

limited back pain, but stated that it did not worsen, and he reported edging his driveway in April. (R. 257-59). The claimant continued to refuse pain medication. *Id*. On his September 2006 visit to Dr. Donham, the claimant refused an MRI, though the claimant reported back pain with paresthesia (tingling and numbness) in the lower extremities. *Id*.

In October 2006, the claimant saw Dr. Norwood, a neurologist. Dr. Norwood noted that the claimant reported a life-long seizure disorder, but was not certain that the episodes could be classified as seizures, because while many of the claimant's friends and family saw him exhibit symptoms, none had ever described the symptoms to the claimant such that he could tell Dr. Norwood about them. (R. 245). He also noted that the levels of phenobarbital and Dilantin had probably been subtherapeutic or barely therapeutic for many years. (R. 245). Dr. Norwood recommended that the claimant avoid any situation in which a seizure, altered consciousness, or altered awareness might result in injury to himself or someone else. (R. 246). The claimant declined Dr. Norwood's offer to prescribe a new seizure medication. (R. 247). Also, during this visit, Dr. Norwood subjected the claimant to a functional capacity evaluation, finding that the claimant's right leg strength was normal and that he acted guardedly and with limited effort in testing, but that no reproducible left leg weakness existed. (R. 246). Tone in the legs was normal. *Id*.

The claimant told Dr. Donham and Dr. Norwood in October 2006 that he had suffered a seizure recently (R. 245, 256). From late 2006 to early 2007, the claimant saw Dr. Donham for seizure medication refills and did not mention any back pain. *Id*. Dr. Solorio saw the claimant in November 2006, and found that the claimant had lower back tenderness and back pain on straight leg raising, but that he had 5/5 strength in the lower extremities. (R. 249-50). In February 2007,

the claimant saw Dr. Donham again, received another refill on his seizure medication, said he had not suffered any seizures, and declined to have his seizure medication levels checked. (R. 256).

On his response to the prehearing order dated April 12, 2007, the claimant indicated that he takes one to four BC powders for his back pain per day. (R. 115). In May 2007, Dr. Solorio completed a functional capacity evaluation for the claimant, saying that the claimant could heel and toe walk without difficulty with assistance, that he should use a cane as needed, that he could only lift ten pounds on occasion, that he could sit for seven hours of an eight-hour workday and stand for one, that he could not bend or stoop, that he could not climb, and that he could do limited pushing and pulling movements and reaching movements. (R. 263-64). He added that the claimant had pain present to such an extent as to distract him from adequate performance of daily activities or work. (R. 265). Dr. Solorio also found that the claimant had some sciatic notch tenderness. (R. 263). The claimant, nevertheless, refused any medication at this visit. *Id*.

Hearing

At the hearing, the claimant testified to the following. First, he said that he was unwillingly retired from his lawn service job for Decatur because he could not do the work quickly enough, and that he receives retirement and disability. (R. 288-90). He added that his main medical problem for which he claims disability is his back pain. (R. 289). The claimant said that he had a seizure in October 2006 but that he did not have them often; he also said that he was not on pain medication, partially because he could not afford the drugs, and takes BC powders instead. (R. 292-93). The claimant said that he usually sleeps two hours a night and then wakes up intermittently because of his back pain. (R. 293-94).

The claimant describes his pain as manageable on maybe two days a week, and on those days, he does housework and goes grocery shopping. (R. 294-95). He can walk five to six blocks unassisted before getting back pain, and standing hurts more than sitting or walking with a cane. (R. 297-98). Although the claimant said he was depressed, he did not think he had any psychological problems. (R. 300). The claimant agreed that he can lift something that weighs about as much as a bag of sugar, and that he could move it from one shelf to another, but that he could not carry it very far. (R. 301). At work, he was required to use and carry power equipment, like weed eaters and push lawn mowers, but he said those actions would cause him pain. (R. 302). He said that he would have tried to do a sit-down job had the City of Decatur offered him one, but he was not sure if he could. (R. 302-03).

In his decision, the ALJ found that the claimant has not engaged in substantial gainful activity since filing for disability. (R. 17). He then found that the medical evidence indicated that the claimant has a severe combination of impairments that includes the back injury and the seizure disorder. *Id*. In reaching this conclusion, the ALJ ruled out the possibility that the claimant's mood disorder and depression were severe.[1] (R. 19). The ALJ found that his mood disorder, if it exists at all, or depression, does not hamper the claimant's day-to-day life or ability to work. *Id*. In reaching the conclusion that the claimant could not claim disability based on a mood disorder, the ALJ did not give any weight to either Dr. Haney's opinion or that of the state agency medical consultant, finding that those two doctors only saw the claimant on single visits

---

[1] After the claimant was arrested on a disorderly conduct charge in 2002, he underwent a psychiatric evaluation and was diagnosed with bipolar affective disorder. However, claimant never alleged any mental impairments on his disability questionnaires when he applied for disability benefits, nor did he list a disabling mental impairment when he filed an appeal to Appeals Council. Even more significantly, claimant did not raise on appeal to this court any issue relating to his mood or mental disorder; accordingly, this court will not address that possible disorder.

and that he concluded the claimant obviously functioned well, despite any possible mood disorder. *Id*.

Next, the ALJ found that the claimant did not have an impairment or a combination of impairments that met listed criteria. (R. 19). In making this determination, the ALJ concluded that the spinal compression fracture did not meet the Listings' qualifications for severity, which require that the spinal cord be compromised. He also concluded that the claimant's possible seizure disorder does not conform to a typical seizure pattern, nor are the seizing episodes frequent enough to meet the Listing criteria. *Id*. The ALJ did not find the possible mood disorder to affect the claimant's ability to work. *Id*.

The ALJ then found that the claimant could do a limited range of light exertional work that involved no repetitive squatting; no lifting greater than thirty-five pounds; no climbing of ropes, ladders, or scaffolds; no working at unprotected heights; and no association with dangerous moving machinery. (R. 20). In making this determination, the ALJ stated that he considered all of the medical evidence before him. He noted that the claimant had the capacity to do light work in his former job; that the claimant was able to engage in normal, everyday activities such as grocery shopping, housework, and edging his driveway; and that he could walk five or six blocks without experiencing pain. (R. 295, 297, 306).

Further, the ALJ found that although a couple of medical evaluations had shown that the claimant was able to perform light work, the claimant was able to perform the tests without a cane, and his balance seemed satisfactory. (R. 23). He also considered that the claimant's fracture has healed and that he has ample strength in his legs, according to the medical evidence. In making that determination, the ALJ gave little weight to the opinions of the state agency

disability consultant, noting that the consultant never saw the claimant and did not have access to all of his medical records. (R. 24). The ALJ also accorded little weight to the opinion of the state medical agency physician for the same reasons. *Id.*

The ALJ gave no weight to Dr. Solorio's two work fitness evaluations, finding his opinion to be inconsistent with the medical evidence on record. *Id*. Also, the ALJ found that the claimant functioned decently without pain medication except over-the-counter drugs, and that he had undergone little treatment for back pain, and no surgery. (R. 23).

In considering the seizure disorder, the ALJ determined that the episodes were infrequent and did not seem to be severe, and the claimant was on very low levels of medication. *Id*. Accordingly, he concluded that the seizure disorder did not meet the listing criteria. (R. 19).

The ALJ found that the claimant was not able to perform his past relevant work, as he could only perform limited, light duty work, and vocational experts (VE) considered his past job as a groundskeeper to be heavy work. (R. 26). At the hearing, the ALJ asked the VE what types of jobs would be available, if any, for a worker with the claimant's age, education, work experience, and light functional capacity. *Id*. The VE testified that such an individual would be able to perform light, unskilled jobs such as inspector, assembler, and labeler, and that thousands of such jobs were available nationally. *Id*. When asked the same hypothetical, but supposing that the claimant only had a sedentary functional capacity, the VE noted that thousands of sedentary, unskilled jobs existed that such an individual could perform, such as sorter, assembler, and table worker. *Id*. Based on this testimony, the ALJ concluded that the claimant should be able to make a successful adjustment to another type of job. *Id*.

## VI.  Discussion

**A. Whether the ALJ accorded appropriate weight to Dr. Solorio's opinion.**

The claimant first alleges that the ALJ erred by not giving Dr. Solorio's opinion enough weight in reaching his decision.  Dr. Solorio is one of the claimant's treating physicians; he is the claimant's orthopedist and also examined the claimant on two occasions to determine his work fitness.

The claimant is correct in stating that the ALJ is to give considerable weight to a treating physician's opinion.  *Crawford v. Comm'r*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, in some instances, a treating doctor's opinion may be against the weight of the rest of the evidence, or may be conclusory.  In these instances, if an ALJ finds good cause not to accord considerable weight to a treating physician's opinion, the ALJ may discount a treating physician's opinions.  *Crawford*, 363 F.3d at 1159.  Further, "the Commissioner may reject any medical opinion if the evidence supports a contrary finding."  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).  If the Commissioner does reject a treating physician's opinion, he must also articulate specific reasons for doing so.  *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir.  2005).

In the instant case, the ALJ stated that he gave no weight to Dr. Solorio's findings in the two work fitness evaluations, one of which was completed in November, 2006, and the other was completed in May, 2007.  These evaluations reflected in part that the claimant had pain present to such an extent as to distract him from adequate performance of daily activities or work.  The reasons the ALJ stated for this rejection were fourfold: (1) lack of medical treatment for pain, (2) lack of prescription treatment for pain, (3) conflict between Dr. Solorio's work fitness

evaluations and chart notes, and (4) conflict between Dr. Solorio's findings and the other doctors' findings, including another treating physician.

  A claimant bears the burden of providing objective medical evidence to show that his condition is severe. *Jones,* 190 F.3d at 1228. Evidence of severity includes treatment sought for the condition. The claimant saw Dr. Donham, his general practitioner, several times in 2006, reporting some back pain, but saying that it did not worsen, and that he did not want prescriptions for pain. When the claimant visited Dr. Donham in late 2006 and early 2007, he did not report back pain but only needed refills on his seizure prescriptions. The claimant did complain of pain to Dr. Solorio as well, but he saw Dr. Solorio for work fitness evaluations during this period, not for regular medical visits. The claimant only had one epidural facet block during his period of alleged disability, and no physician has ever advised him to undergo back surgery. In fact, the overall treatment plan for his back pain has been conservative and minimal, as his doctors have only offered him prescriptions for pain medication, which he has not accepted. Thus, as the ALJ noted, the medical evidence demonstrates that the treatment sought and rendered was relatively minimal and not the kind of treatment that would indicate a severe impairment.

  The ALJ also identified the claimant's nonuse of prescription pain medication as supporting rejection of Dr. Solorio's evaluations. Dr. Solorio's records from November indicate that the claimant reported radicular lower back pain and leg pain, but that he only took over the counter BC powders for the pain. (R. 262). An ALJ may consider medication used to alleviate pain in reaching his decision. *See* 20 C.F.R. § 404.1529(c). Significantly, in addition to only using BC powders for his pain, the claimant continually refused prescriptions for pain

medication.[2]  However, the claimant took from one to four BC powders a day depending on the severity of the pain, which shows that some days he is sometimes only slightly in pain.  The fact that the claimant did not seem to require prescription pain medication and is still able to function on most days supports the ALJ's finding that he is not disabled by pain.  An ALJ is allowed to consider a claimant's daily activities in evaluating and discrediting complaints of disabling pain.  *Wolfe v. Chater,* 86 F.3d 1072, 1078 (11th Cir. 1996).  In any case, the lack of pain medication is not the only basis for the ALJ's rejection of Dr. Solorio's opinion.

The ALJ also considered that the work fitness assessment and Dr. Solorio's own chart notes conflicted.  For example, Dr. Solorio's May 2007 records indicate that the claimant could easily heel and toe walk and that he had 5/5 strength in both legs.  However, that record does not support his finding in the May 2007 fitness evaluation that the claimant needed a cane to ambulate.  Where a physician's opinions conflict with the physician's own medical records, good cause exists for the ALJ to discount the physician's opinion.  *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1998).  Because Dr. Solorio's records partially conflicted with his medical opinion, the court finds that the ALJ did not err in discounting his opinion.

Although the claimant argues that the ALJ erred in not giving substantial weight to Dr. Solorio as one of the claimant's treating physicians, he ignores the fact that the ALJ gave great weight to the opinion of the treating physician Lowery.  Because the two physicians gave contradictory opinions, the ALJ could not give great weight to both of their opinions.  The court notes that while both doctors treated the claimant, Dr. Solorio saw the claimant most frequently

---

[2] The claimant testified that he cannot afford prescription pain medication.  However, no evidence exists anywhere in the record to show that he attempted to find reduced price or free medication from pain clinics or other charitable sources.

during 2003, and saw him only twice during the 2005-2006 time frame. In contrast, Dr. Lowery treated him several times during 2005 and 2006. Further, Dr. Lowery's findings were consistent with Dr. Norwood's findings as to the claimant's work fitness.

When the ALJ articulates specific reasons for discounting a treating physician's opinion and those reasons are supported by substantial evidence, no reversible error lies. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ's reasons for not favoring Dr. Solorio's opinion are several and he thoroughly explained them in his opinion. This court finds that substantial evidence supports the ALJ's rejection of Dr. Solorio's findings, and therefore, the ALJ did not err by according Dr. Solorio's opinion little weight.

**B. Whether the ALJ properly considered the claimant's impairments in combination.**

The claimant alleges that the ALJ did not consider his impairments in combination, including his back pain, his possible seizure disorder, and his mental impairment. The claimant is correct in stating that the ALJ must consider the impairments in combination. "Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." *Jones*, 941 F.3d at 1533; *see also Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir. 1993).

As noted previously, the ALJ found that the claimant has two severe impairments: back pain and a possible seizure disorder. (R. 17). The ALJ also found, for purposes of making a disability determination, that the claimant did not have a mental disability severe enough to impair his ability to work. (R. 19). The ALJ's decision reflects that he properly considered these impairments in combination: "The medical evidence does not document listing-level severity,

and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (R. 19). Further, his residual functional capacity findings and the hypothetical questions he asked the VE referred to limitations such as climbing and association with dangerous machinery that pertained not only to the claimant's back problem, but also to his seizure disorder.

This court finds that the ALJ also considered the claimant's conditions in combination, as he is required to by Step Two of the evaluative procedure, and that he did so in detail. (R. 17-25). The burden to prove disabling limitations, whether alone or in combination, rests with the claimant. *Jones*, 190 F.3d at 1228. The ALJ found that the claimant had not met his burden of proving that the combination of the back pain and seizure disorder was severe enough to disable him to the point that he could not work. This court agrees.

### VII. Conclusion

For the reasons stated above, this court finds the Commissioner's decision to be supported by substantial evidence, and therefore will AFFIRM it. The court will enter a separate order consistent with this opinion.

Dated this 10th day of August, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE